Decree affirmed and appeal dismissed at the costs of the appellants.

# Appeal of Bugbee.
# Appeal of Tolles.

1. A finding of a Master that a young man, described as "of less than average intelligence and capacity," was not implicated in a scheme, devised and carried out by his father and uncle, to defraud both his own and his father's creditors, will not be disturbed unless there is direct evidence to convict the Master of error.

2. Possession of land by a third person is sufficient to put an intended purchaser on inquiry, but he is only bound to make a reasonable inquiry; and when such inquiry reveals the fact that the parties in possession claim under a lease, made subsequent to an absolute deed to his proposed grantor, such purchaser is entitled to disregard this title.

3. Neither such possession, nor notice from those in possession that they had a suspicion that there was fraud in the title, was sufficient to put such purchaser on inquiry as to the fact that the conveyance to his proposed grantor had been fraudulently obtained, and that the same was intended only as a security for a debt and made in this form to defraud creditors.   The only parties that could have informed him of this fraud were the parties to it and it is not to be presumed that they would have informed him thereof.

May 29th, 1885.   Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark JJ.   Paxson J., absent.

Appeals from the Court of Common Pleas of *Warren county:*   Of January Term 1884, Nos. 404 and 404½.

Two appeals (1) by Albert Bugbee; (2) by Samuel Tolles *et al.,* both from the same decree dismissing a bill in equity filed by said Albert Bugbee, Samuel Tolles *et al.* against Wesley Millspaw David Beaty and Frederick Bugbee, praying that certain deeds and a lease be delivered up for cancellation.

The bill averred that on June 10th, 1872, Frederick Bugbee was seized in fee, *inter alia,* of lot No. 55 in Mead township, Warren county, containing about 250 acres of land.   On April 13th, 1874, he conveyed this tract to his son, Albert

Bugbee, one of the complainants, who went into possession of the same and has since remained there.

On October 22d, 1875, Albert Bugbee, at the request of his father, conveyed this property to Wesley Millspaw, one of the defendants, as security for the payment of money which Millspaw was about to advance for the benefit of Frederick Bugbee. The consideration named in this deed was $2000, but in reality there was no consideration and there was an express agreement that Millspaw would sign a written agreement to reconvey the property to Albert Bugbee whenever the sum actually advanced should be repaid. With this understanding Albert Bugbee entrusted the deed to his father with express instructions not to deliver the same to Millspaw without receiving the said contract of reconveyance in return. Frederick Bugbee took the deed to the Recorder's office and had it recorded without the knowledge or consent of said Albert Bugbee and without securing the contract for reconveyance. The said Millspaw never paid any consideration for the deed, and the whole proceeding was a corrupt and collusive agreement between Frederick Bugbee and Millspaw without the knowledge of said Albert Bugbee, to defraud the creditors of Frederick and Albert Bugbee and to cheat said Albert Bugbee out of his land.

On September 29th, 1876, Frederick Bugbee leased to Samuel Tolles, *inter alia*, this same tract of land for a period of twenty years for the purposes of mining for petroleum, reserving a royalty. Albert Bugbee subsequently ratified and confirmed the act of Frederick Bugbee in executing this lease. By sundry conveyances from Tolles the said leasehold became vested in himself and, with the exception of Albert Bugbee, the other complainants, who were associated under the name of "The Lake Erie Oil Company."

On May 4th, 1878, Millspaw conveyed to David Beaty part of said tract and executed an oil lease to him for the balance. David Beaty had full notice of the title of Albert Bugbee and that the deed from said Albert Bugbee to Millspaw was intended as security for money intended to be advanced. David Beaty entered upon a portion of said lands and drilled a well for oil.

The bill prayed that the deed from Albert Bugbee to Millspaw be declared to be a mortgage and that same be delivered up to be cancelled, because fraudulently obtained, also that the conveyance and lease from Millspaw to Beaty be delivered up for cancellation.

Answers were filed by Millspaw and Beaty: Millspaw admitting the conveyance to him and from him to Beaty, but denying the allegations of fraud, and claimed that the

deed to him was an absolute one. Beaty denied all knowledge of the matter and claimed as a *bona fide* purchaser for value.

The cause was referred to an examiner, and subsequently to a Master (C. Heydrick Esq.), who reported on the disputed facts, *inter alia*, as follows:

In or about the month of October, 1875, said Frederick Bugbee and Albert Bugbee were indebted to Messrs. Selew and Popple, of Dunkirk, N. Y., and being so indebted, the said Wesley Millspaw proposed to the said Frederick Bugbee, as a means of hindering and delaying the said Selew and Popple in the collection of their debt, that he should procure the said Albert Bugbee to convey the said tract No. 55 to him, the said Wesley Millspaw, and that he would give to the said Albert a bond, conditioned to reconvey the said tract when the said debt should be got out of the way. In pursuance of the said proposition, the said Frederick called upon the said Albert, and told him that the said Millspaw was about to lend him some money to be used in rebuilding the mill on said tract 55, then recently burned, and wanted him to get a deed of the said tract 55 as security for such loan, and would give a bond in return to reconvey the land. Thereupon, to wit, on or about the 22d day of October, 1875, the said Albert executed and delivered to the said Frederick a deed conveying the said tract 55 to said Millspaw in fee simple; the deed bearing date the day and year aforesaid, was, by the said Frederick Bugbee, delivered to the recorder of deeds of said Warren county, and was duly recorded on the 28th day of October, 1875. At the time of the delivery of the said deed to the said Frederick by the said Albert, the said Albert said : " Before you deliver this deed to Millspaw get that bond that he agreed to give." No bond was ever given by said Millspaw to said Albert, and there is no evidence that said Millspaw loaned any money to either the said Frederick or the said Albert on the credit of the said deed. The said Albert was ignorant of the fraudulent intent of the said Frederick Bugbee and Wesley Millspaw in respect to said deed.

After Tolles and his associates in the Lake Erie Oil Company went into possession of this land under their lease from Frederick Bugbee and began drilling for oil, Millspaw asserted title to the land and notified the company that Bugbee's lease gave them no rights, and subsequently he, Millspaw, on March 15th, 1878, executed to them an oil lease for five acres of this land. The Master also found as a fact that the Lake Erie Oil Company was ignorant of the fraud committed in procuring the deed from Albert Bugbee, when this lease

was made. That the deed from Millspaw to Beaty was for a good consideration, and the latter had no knowledge of the fraud practiced upon Albert Bugbee; that before the said David Beaty purchased and leased the said land he had notice from the said Lake Erie Oil Company of the said lease from the said Frederick Bugbee to the said Samuel Tolles, and that the said company claimed the said tract 55 under the said lease, and in a conversation respecting said lease on the premises before Beaty's purchase, the said Tolles said to him: "It seems that Millspaw and Bugbee have put their heads together to swindle us out of it, but that we (the Lake Erie Oil Company) will defend our rights." At the time of making such declaration neither the said Tolles nor any other member of the said company had any knowledge of the fraud that had been practiced upon the said Albert Bugbee, or of any fact pointing to such fraud, nor is there any evidence that they had any such knowledge until about the time of filing their bill. That until near the time of filing the present bill Albert Bugbee remained in ignorance of the fraud that had been committed in the procurement of the said deed, and believed that he had lost the land in consequence of indebtedness of his father to Millspaw, and so frequently declared. He knew that his father had delivered the deed without exacting the stipulated bond, and took no steps for his protection, but acquiesced in the delivery. At the time of said purchase by Beaty the said Millspaw was in apparent possession of the tract 55, subject to the rights of the Lake Erie Oil Company under the five acre lease, and was erecting a boarding house thereon. Said Albert Bugbee was working on said boarding house under the direction of his father.

Upon this state of facts the Master reported that the bill should be dismissed as to all the plaintiffs, except Albert Bugbee and that as to him there should be a decree for reconveyance of that part of the property leased to Beaty, subject however to the lease to Beaty, who was a *bona fide* purchaser as to the other part, as there was nothing to put him upon any such inquiry as would have led to the discovery of the fraud in the conveyance to Millspaw.

The court, TAYLOR, P. J., confirmed all the Master's findings of fact except that Albert Bugbee was ignorant of the fraud committed in the procurement of the deed to Millspaw, and accordingly dismissed the bill as to all the complainants.

Whereupon complainants took this appeal assigning for error, *inter alia*, this action of the court.

*Roger Sherman* (*Samuel T. Allen* and *Samuel Grumbine* with

him), for appellants.—Albert Bugbee was not a party to the fraud of Millspaw and his father, his conveyance was made in good faith, as he supposed, as a security for money to be advanced by Millspaw. The evidence fully bears out the finding of the Master.

David Beaty was not in law an innocent purchaser for value, without notice of the adverse title of Albert Bugbee, and fraud of Millspaugh and Frederick Bugbee.

Knowledge of any fact sufficient to put a man of ordinary prudence and experience upon inquiry, and sufficient to excite a reasonable doubt as to a title or the *bona fides* of a transaction is such notice as will be fatal to the claim of such person to be considered a *bona fide* purchaser: Johnston *v.* Harvy, 2 P. & W., 82, 92; Baker *v.* Bliss, 39 N. Y., 70; Mateer *v.* Hissim, 3 P. & W., 160, 164; Price *v.* Junkin, 4 W., 85; Keichline *v.* Keichline, 4 P. F. S., 76; Hoffman *v.* Strohecker, 7 W., 86; Lewis *v.* Bradford, 10 Id., 67; Sergeant *v.* Ingersoll, 7 Penn., 340; Same *v.* Same, 15 Id., 343; Davis *v.* Butterback, 2 Y., 211.

It is no excuse for a neglect to make inquiry, to say that nothing could have been found out by such inquiry: Broom's Legal Maxims, 742, and note, *caveat emptor :* Maul *v.* Rider, 9 P. F. S., 167; Kerr on Fraud and Mistake, p. 317, 238, 239, 240, 245 and 252; Sugden on Vendors, 755; Bump on Fraudulent Conveyances, p. 477, 478, 233; Shaw *v.* Spencer, 100 Mass., 382; Baker *v.* Bliss, 39 N. Y., 70; Story's Eq., Jurisprudence, §§ 395, 408, note 4, 400 b.

In this case there was actual possession, accompanied by actual notice on the ground. Tolles was the tenant of Albert Bugbee: Chapman *v.* Glassell, 13 Ala., 50.

Tolles and his associates went into possession under a lease from Bugbee, the validity of which is not disputed. The title cannot be taken away by estoppel indirectly in this suit: Taylor *v.* Shufford, 15 Am. Dec., 512; 1 Bouvier's Law Dic., 541; Sunderlin *v.* Struthers, 11 Wr., 411; Pendleton *v.* Richey, 8 Casey, 58; Newman *v.* Edwards, 10 Id., 32; Duncan's Appeal, 7 Wright, 67; Keating *v.* Orne, 77 Pa., 89; Harlan *v.* Harlan, 3 H., 507.

*R. Brown* (*D. I. Ball* with him), for David Beaty, appellee.—A Master's finding of fact will not be disturbed except for a plain and obvious mistake: Thompson's Appeal, 7 Out., 603; Logue's Appeal, 8 Id., 136.

If the possession be sufficient to put the purchaser on inquiry, he can only be charged with what he would probably have ascertained if he had made such inquiry. It is too much to assume that the parties to the alleged fraudulent transactions

would have informed him of the fraud: Bryan's Appeal, 5 Out., 389.

As against the recorded title, it must be proved the purchaser knew exactly the state of the party having the equity or the unrecorded title, and, with that knowledge, he acquired the legal estate. Nothing short of this, which is actual fraud, will postpone his legal title, and the fraud must be clearly proved. The true ground of determination in all cases of notice, is that, in itself, it is a species of fraud, and takes away the *bona fides* of the purchaser and puts him in *mala fides:* Peebles *v.* Reading, 8 S. & R., 496; Hoffman *v.* Strohecker, 7 Watts, 86.

What makes inquiry a duty is such a visible state of things as is inconsistent with the perfect right in him who proposes to sell: Meehan *v.* Williams, 12 Wright, 240; Billington *v.* Welsh, 5 Binney, 129; Plumer *v.* Robertson, 6 S. & R., 179; Boggs *v.* Varner, 6 W. & S., 474; 1 Story's Equity, 391; 2 Sugden on Vendors, 774.

*W. M. Lindsey* (*S. P. Johnson* and *James O. Parmlee* with him), for Millspaw, appellee.

Mr. Justice GORDON delivered the opinion of the court, October 5th, 1885.

There was a difference of opinion between the Master and the court below as to the status of Albert Bugbee with reference to the fraudulent scheme concocted by his uncle, Wesley Millspaw, and his father, Frederick Bugbee, to defraud creditors. In all other particulars they agreed. The Master, having had Albert before him as a witness, says: "he appeared to be a young man of less than average intelligence and capacity. While he was the undisputed owner of the lands in question, as well as after his conveyance to Millspaw, he was engaged in the manufacture of lumber thereon, under the direction of his father and Millspaw, without, so far as I can discover, any clear conceptions of his own relations to the business." From this, to him, evident want of intelligence on the part of Albert, and from the absence of any direct evidence to implicate him in the scheme devised and carried out by his father and uncle, he acquits him of any fraudulent intention, and recommends a decree in his favor. We have given this case a very careful examination, and notwithstanding the learned and able opinion of the court below, we have failed to discover wherein the Master was wrong. The question is, why did Albert execute to Millspaw the deed dated October 22d, 1875, for the fifty-five acre track? Was it for the purpose of putting it out of the reach of Selew & Popple, creditors of his

father and himself? The Master asserts that such was not his purpose; that he executed it at the instance of his father on the representation that Millspaw was about to lend him, the father, some money to be used in the rebuilding of the saw-mill upon this tract No. 55; that the deed would be delivered to Millspaw as security for the loan, and that a bond, or defeasance, would be given in order to insure a reconveyance of the land on repayment of the money. In other words, the transaction, as represented to Albert, amounted to a mortgage on which money was to be raised to be applied to the payment of debts and expenses incurred in the rebuilding of a mill in which they were both interested. It is true, that the bond, or defeasance, was never executed, neither was the money advanced, but *non constat* that Albert was not cheated as well as his creditors. Had the representations made by Frederick Bugbee to his son, at and before he obtained from him the deed, been fulfilled; had he taken the bond, for which Albert had stipulated on delivery of the deed to Millspaw, and had the money been paid on the debts for the rebuilding of the mill, the transaction could not have been impeached. The difficulty arises in the fact that Millspaw and Frederick Bugbee intended nothing of the kind; their intention was to defraud the creditors of the two Bugbees, make the best possible out of the property, and pocket the proceeds. Nevertheless, the learned Master fails to find evidence sufficient to implicate Albert in the knavery of two relations. He had his suspicions that Albert did know, or ought to have known, what was intended, but having no direct testimony on that point, and believing, from the appearance and manner of the young man when before him, that he was intellectually of an inferior grade, he concluded that he was the dupe of his uncle and father, and unconscious of their designs. The learned court, on the other hand, thinks Albert's stupidity was merely put on for the purpose of deceiving the Master, and enters into a lengthy argument to prove this assumption. We are not, however, convinced that in this the Master has been convicted of error. He had Albert before him as a witness, and had thus a means of judging of his character that the court had not. Nor does it follow that because, in a subsequent transaction, he contradicted himself, and was guilty of falsehood, that he was, therefore, not intellectually weak; rather the contrary. The court, independently of this, thought that the master had overlooked, or had not given sufficient attention to, the letter, Millspaw to Albert, of the 14th of October, 1875, and that herein was found proof positive that the latter had notice of the intended fraud. In this again, we are not satisfied that the court was right. Let us examine this letter which is supposed to have given Albert information of a

14 OUTERBRIDGE—22

scheme to defraud his own and his father's creditors, and without which the court does not profess to have any direct evidence to connect him with that scheme. "If I take a deed, and give you a bond, I can get the mill insured, and if it burns it won't be discounted, and your debts and your father's won't crowd you. I do this for your good, for you know I am safe for what money I have advanced." This letter evidently refers to some previous proposition, doubtless that of Frederick Bugbee, and was intended to induce Albert to carry it out. But how does this convey notice of an intended fraud on creditors? As he had been informed, Millspaw was to advance money to his father to pay for the erection of the mill; to pay debts contracted for that purpose; and reading this letter in view of the previous arrangement, to what conclusion could he come other than that he was to be relieved from the importunity of his creditors by the payment of their accounts? Now, it is all idle to say that this letter informed Albert that Millspaw was already secured for the money that he had advanced for this purpose, for there had been none advanced, nor was it contemplated that any should be except on the security of the deed. The reference must, therefore, be to some previous indebtedness by Frederick Bugbee to Millspaw. This letter, then, was anything but notice of an intent to cheat Selew & Popple, or any one else, and for aught we can discover, the appellant had a perfect right to rely on the integrity of his father and uncle in the arrangement proposed by them. It is now sufficiently evident that the scheme was to get from Albert the title to his property without consideration, and to leave both him and his creditors in the lurch, but we do not see how the young man was to know in advance that his father and uncle deliberately intended the perpetration of a fraud of this kind. Under the circumstances thus as above detailed, we cannot agree with the learned judge of the court below that the finding of the Master required reversal, and we must therefore adopt the decree which he has recommended.

As to the appeal of Tolles *et al.* we have but little to say. The notice of the Lake Erie Oil Company to Beaty came to nothing, for it was based on a mere suspicion without a fact to sustain it, and if that company had not been able to discover the defect in Millspaw's title, it is entirely too much to charge Beaty with a discovery of that kind. To no purpose would have been an inquiry of the parties to the fraud; it is not to be presumed that they would have revealed their own iniquity, and as to Albert, had he at that time been asked whether, in face of his own deed to the contrary, he still claimed to own the property, he would, doubtless, have answered Beaty, as he

[Shaver v. McCarthy.]

did others, that his title had been sacrificed to his uncle for the debts of his father. Moreover, inquiries of this kind are necessary only when there is some good reason for them. But what reason had Beaty to go hunting around after a fraud committed by the Bugbees and Millspaw on their creditors, when he had not the remotest evidence to put him upon such a search? The Lake Erie Company alleged that they believed that somehow or the other an attempt had been made to cheat them. But if so they were *particeps* of the cheat, for why did they take a lease from Frederick Bugbee when there was a deed on record for the land to Wesley Millspaw? Their title under such circumstances was clearly good for nothing, and Beaty had a perfect right so to treat it. Then, as Albert Bugbee at that time made no claim to the property, we can discover no reason why Beaty should have been put on inquiry.

The appeal of Tolles, Rider *et al.* is dismissed at their costs, and the decree of the court, as to them, is affirmed.

The decree in the case of Albert Bugbee is reversed at the costs of the appellees, Wesley Millspaw and Frederick Bugbee, and it is ordered that the court below proceed in the premises as recommended in the report of the Master.